UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID McCHESNEY,

                Plaintiff,

                                                    9:10-CV-1409

v.                                                      (GTS/DEP)

DR. SAMUEL A BASTIEN, IV, Ph.D.,
Exec. Dir., St. Lawrence Psychiatric Ctr.,

                              Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

DAVID McCHESNEY, 06-A-3298
  Plaintiff, *Pro Se*
CNY Psychiatric Center
P.O. Box 300
Marcy, New York 13403-0300

HON. ERIC T. SCHNEIDERMAN                  MICHAEL G. McCARTIN, ESQ.
Attorney General for the State of New York       Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

       Currently before the Court, in this *pro se* prisoner civil rights action filed by David McChesney ("Plaintiff") against Executive Director of the St. Lawrence Psychiatric Center Samuel A. Bastien ("Defendant"), are the following: (1) Defendant's motion for summary judgment (Dkt. No. 12); (2) United States Magistrate Judge David E. Peebles' Report-Recommendation recommending that Defendant's motion be denied (Dkt. No. 14); and (3) Defendant's Objection to the Report-Recommendation (Dkt. No. 15). For the reasons set forth below, the Report-Recommendation is accepted and adopted, and Defendant's motion is denied.

I.      **RELEVANT BACKGROUND**

Generally, construed with the utmost of liberality, Plaintiff's Complaint asserts a Fourteenth Amendment procedural due process claim against Defendant for continuing to involuntarily commit Plaintiff to the St. Lawrence Psychiatric Center (pursuant to Article 10 of the N.Y. Mental Hygiene Law) for sixty days after the expiration of an order involuntarily committing Plaintiff to that facility on consent for six months (pursuant to N.Y. Correction Law § 402), without affording Plaintiff prior notice and an opportunity to be heard as to that continuing involuntary commitment. (*See generally* Dkt. No. 1.) For a more detailed recitation of Plaintiff's claim, and the factual allegations giving rise to that claim, the Court refers the reader to the "Facts" and "Claims" section of his Complaint, the exhibits to that Complaint, and Part I of Magistrate Judge Peebles' Report-Recommendation. (Dkt. No. 1, at ¶¶ 7-19 & Exs. A-F; Dkt. No. 14, at 3-10.)

Generally, in his motion for summary judgment, Defendant asserts the following four arguments: (1) based on the current record, Plaintiff's initial commitment to the St. Lawrence Psychiatric Center for six months (under N.Y. Correction Law § 402) did not violate his procedural due process rights under the Fourteenth Amendment, as a matter of law; (2) based on the current record, Defendant's 60-day delay in procuring a substitute order retaining Plaintiff in the St. Lawrence Psychiatric Center (under Article 10 of the N.Y. Mental Hygiene Law), after the expiration of the previously described six-month order of retention, did not violate Plaintiff's procedural due process rights under the Fourteenth Amendment, as a matter of law; (3) in any event, Plaintiff has failed to allege facts plausibly suggesting Defendant's personal involvement in the constitutional violation alleged; and (4) in any event, based on the current record evidence (including the fact that Defendant relied on the advice of Office of Mental Health counsel in

deciding to "how to address plaintiff's stay at [St. Lawrence Psychiatric Center]"), Defendant is protected from liability as a matter of law by the doctrine of qualified immunity. (Dkt. No. 12, Attach. 10, at 9-20 [attaching pages "7" through "18" of Def.'s Memo. of Law].) For a more detailed recitation of Defendant's legal arguments, the Court refers the reader to the motion for summary judgment in its entirety. (*Id.*)

Despite having received adequate notice of the failure to respond to Defendant's motion, Plaintiff did not file such a response. (*See generally* Docket Sheet.) Nor did Defendant file a reply. (*Id.*)

Generally, in his Report-Recommendation, Magistrate Judge Peebles rejected each of Defendant's four arguments, and recommended that Defendants motion be denied. (*See generally* Dkt. No. 14, at 10-11, 17-44.) For example, with regard to Defendant's qualified immunity argument, Magistrate Judge Peebles found that the procedural due process right sought to be vindicated by Plaintiff in this action was clearly established during the time in question (i.e., the fall of 2007), essentially for the following four reasons: (1) the Supreme Court had previously confirmed the existence of that right in the general context of an involuntary confinement in a psychiatric facility; (2) there is no merit to Defendant's argument that such a right ceases to exist, or even reasonably appears to cease to exist, in the specific context of confinements pursuant to Article 10 of the N.Y. Mental Hygiene Law; (3) Defendant has failed to adequately explain, and/or support, why he did not avail himself of the procedure (provided by Article 10) to afford Plaintiff due process while safeguarding the concerns of the community before his term of authorized confinement expired; and (4) Defendant's reliance on the advice of counsel is unavailing because it was objectively unreasonable to rely on that advice under the

circumstances. (*Id*. at 35-43.) Familiarity with the remaining grounds of Magistrate Judge Peebles' Report-Recommendation is assumed in this Decision and Order, which is intended primarily for the review of the parties.

Generally, in his Objection to the Report-Recommendation, Defendant asserts the following four arguments: (1) because it was objectively reasonable for Defendant to rely on the advice of counsel, and because he did so in "good faith" (as expressly recognized by Magistrate Judge Peebles), Defendant should be entitled to qualified immunity; (2) in rejecting the advice-of-counsel argument that Defendant asserted in support of his qualified immunity defense, Magistrate Judge Peebles' erroneously relied on the case of *In re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008), which is distinguishable because (a) that case involved an attorney-client privilege issue, not an advice-of-counsel issue, and (b) in any event, that case turned on the fact that the petitioners therein did not claim a "good faith or state of mind defense" (which is claimed by Defendant in this case; (3) the more-recent Second Circuit case of *Taravella v. Town of Woolcott*, 599 F.3d 129, 135, n. 3 (2d Cir. 2010), supports the more-applicable point of law that, "at the very least, the solicitation of legal advice informs the reasonableness inquiry" of a qualified immunity defense; and (4) here, it was objectively reasonable for Defendant to rely on the advice of counsel (even if the Court were to determine that the advice was ultimately incorrect), because Defendant was a non-lawyer who was "dealing with a new statute and a new New York Court of Appeals' decision applying that statute," as well as dealing with a "psychiatric patient with an absolutely horrendous record of violent abuse of children." (Dkt. No. 15, at 4-9 [attaching pages "2" through "7" of Def.'s Obj.].)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard Governing the Review of a Report-Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[1] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[2]

---

[1]     *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]     *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.[3] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[5]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

---

[3]  *See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

[4]  *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[5]  *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

B.     **Standard Governing a Motion for Summary Judgment**

In Parts III.A. and III.B. of his Report-Recommendation, Magistrate Judge Peebles correctly recited the well-known legal standard governing a motion for summary judgment, including the standard governing such motions that are not properly opposed by *pro se* litigants. (Dkt. No. 14, at 11-17.) As a result, this standard is incorporated herein by reference in this Decision and Order, which (again) is intended primarily for the review of the parties.

The Court would add only one point. The failure to respond to a motion for summary judgment does not only impact the Court's consideration of the factual assertions contained the movant's Local Rule 7.1 Statement, as observed by the Magistrate Judge. (Dkt. No. 14, at 13-17.) It also impacts the Court's consideration of the legal arguments contained the movant's memorandum of law. This is because, in this District (as in many districts), when a non-movant fails to oppose a legal argument contained in a defendant's memorandum of law, the defendant's burden with regard to that legal argument has been lightened such that, in order to succeed with regard to that legal argument, he need only show the facial merit of the legal argument.[6] The

---

[6]    *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *see, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *cf. Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y.1999) (McAvoy, C.J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y.1999) (McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the Court to conclude that it has abandoned them.") (collecting cases); *see also Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n. 108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

Court notes that this rule applies even when the nov-movant is proceeding *pro se* (which affords such litigants a certain amount of special solicitude but does not altogether excuse non-compliance with such a rule).[7]

### C. Standard Governing Qualified Immunity Defense

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

---

[7] *See, e.g., Cossey v. David*, 04-CV-1501, 2007 WL 3171819, at *4 & nn. 19-20 (N.D.N.Y. Oct. 29, 2007) (Lowe, M.J., adopted by Scullin, J.); *Sledge v. Kooi*, 04-CV-1311, 2007 WL 951447, at *5 & nn. 38-39 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 WL 3940592, at *2 & n. 2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 WL 189021 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n. 58 (N.D.N.Y. Oct. 18, 2006) (Lowe, M.J. adopted by Hurd, J.); *Hernandez v. Nash*, 00-CV-1564, at *2 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.), *adopted by* Decision and Order (N.D.N.Y. filed Sept. 30, 2003) (Scullin, C.J.).

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[8]  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[9]  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[10]  As the Supreme Court has explained,

---

[8]   *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[9]   *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[10]   *See also Malsh v. Corr. Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

9

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[11]

### III.   ANALYSIS

#### A.   Recommendations Regarding Defendant's First Three Arguments

After carefully subjecting the Magistrate Judge's Report-Recommendation regarding Defendant's first three arguments to a clear-error review, the Court accepts and adopts those portions of the Report-Recommendation for the reasons stated therein. (Dkt. No. 14, at 17-35.)

The Court would add only the following analysis regarding Defendant's lack-of-personal-involvement argument. That argument is based solely on Fed. R. Civ. P. 12(b)(6), not at all on Fed. R. Civ. P. 56. (Dkt. No. 12, Attach. 10, at 17-18 [attaching pages "15" and "16" of Def.'s Memo. of Law].) Of course, this is entirely permissible.[12] Given the presence of record evidence accompanying a motion asserting such an Rule 12(b)(6) argument, the impulse to consider that evidence when evaluating that argument is certainly understandable. (*See, e.g.,*

---

[11]   *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

[12]   "To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968); *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

Dkt. No. 14, at 34 [considering Def.'s declaration acknowledging that he received letter from Plaintiff's counsel dated October 10, 2007, when evaluating Defendant's Rule 12[b][6] lack-of-personal involvement argument].) However, in the undersigned's view, such an impulse should be resisted.

Granted, sometimes a district court in the Second Circuit may liberally construe a *pro se* plaintiff's response to as effectively amending the allegations contained in the plaintiff's complaint. However, it appears that, generally, a district court may properly do so only when (1) the response is consistent with the allegations contained in the non-movant's complaint, and (2) the response is in opposition to a motion to dismiss for failure to state a claim. Here, Plaintiff has submitted no response at all to Defendant's motion, leaving the Court to only guess as to which allegations he would and would not want amended by the extrinsic evidence in question. More importantly, the pending motion is one for *summary judgment*, which comes relatively late in a proceeding and after discovery has been supervised by the Court and completed. (*See* Dkt. No. 10 [Pretrial Discovery and Scheduling Order filed May 16, 2011, establishing discovery deadline of Sept. 13, 2011].)[13] Simply stated, *sua sponte* treating Plaintiff's Complaint as having been effectively amended through the record evidence adduced by Defendants' in support of their own motion for summary judgment would be, in the Court's view, a waste of judicial resources and unduly prejudicial to Defendants under the circumstances.[14]

---

[13]   For the sake of brevity, the Court will set aside the issue of whether the factual allegations extracted from the extrinsic record evidence in question are consistent with the factual allegations contained in Plaintiff's Complaint, which conspicuously omits those facts although it is otherwise relatively dense with factual detail (despite its succinctness).

[14]   *See also Brown v. Raimondo*, 06-CV-0773, 2009 WL 799970, at *2, n.2 (N.D.N.Y. March 25, 2009) (Report-Recommendation of Treece, M.J., adopted by Suddaby, J.) ("The Court notes that opposition papers [on summary judgment motions] are not the proper vehicle to instill new causes of action or add new defendants."), *aff'd*, 373 F. App'x 93 (2d Cir.

Fortunately for Plaintiff, however, even without the benefit of the extrinsic evidence in question, Plaintiff's Complaint (when construed with the utmost of special liberality) contains factual allegations plausibly suggesting that Defendant (1) has directly participated in the challenged conduct, (2) after learning of the violation through a report or appeal, has failed to remedy the wrong, (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred, (4) was grossly negligent in managing the subordinates who caused the unlawful event, and/or (5) failed to act on information indicating that unconstitutional acts were occurring.

For example, Plaintiff's Complaint alleges as follows: (1) during the time in question, Defendant "was the Chief Executive Officer at SLPC" (Dkt. No. 1, at ¶ 11); (2) "[o]n October 5, 2007, plaintiff was not released to parole, but was instead detained by defendant until December 4, 2007" (*id.* at ¶ 11); (3) Plaintiff filed a petition against Defendant in state court on November 20, 2007, regarding his failure to change Plaintiff's status to one of voluntary commitment (*id.* at 12); (4) on November 28, 2007, Plaintiff was referred by Defendant's office to a Case Review Team for evaluation under the Sex Offender Management and Treatment Act (*id.* at ¶ 12); and

---

2010); *Smith v. Greene*, 06-CV-0505, 2011 WL 1097863, at *3, n.5 (N.D.N.Y. Feb. 1, 2011) (Baxter, M.J.) ("[P]laintiff should not be allowed to assert any new claims at this stage of the case, particularly through his response to a summary judgment motion."), *adopted by*, 2011 WL 1097862 (N.D.N.Y. March 22, 2011) (Suddaby, J.); *Jackson v. Onondaga Cnty,* 549 F. Supp.2d 204, 219-20 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.) (finding that pro se civil rights plaintiff's complaint should not be effectively amended by his new allegations presented in his response to defendants' motion for summary judgment); *Shaheen v. McIntyre,* 05-CV-0173*,* 2007 WL 3274835, at *1, 9 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.) (finding that pro se civil rights plaintiff's complaint should not be effectively amended by his new allegations presented in his response to defendants' motion for summary judgment); *Harvey v. New York City Police Dep't*, 93-CV-7563, 1997 WL 292112, at *2 n.2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' motion, entitled 'Notice of Motions in Response and Opposing Defendant'(s) Summary Judgment Motions,' the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims.") (citing *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 [S.D.N.Y.1997]).

(5) on November 30, 2007, a New York State court judge declared that Plaintiff was illegally detained and ordered Defendant to release Plaintiff to parole (*id.* at ¶ 14).

While these allegations do not constitute the model of fair notice, they (albeit barely) satisfy the plausibility standard established by *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

### B.    Recommendation Regarding Defendant's Fourth Argument

After carefully subjecting the Magistrate Judge's Report-Recommendation regarding qualified immunity to a *de novo* review, the Court rejects each of the arguments asserted in Defendant's Objections (*see, supra,* Part I of this Decision and Order), and accepts and adopts that portion of the Report-Recommendation for the reasons stated therein (Dkt. No. 14, at 35-43).  The Court would add only the following analysis.

As an initial matter, the Court notes that, because Plaintiff failed to file an opposition memorandum of law, Defendant need show only facial merit to his qualified-immunity argument in order to succeed on it.  *See, supra,* Part II.B. of this Decision and Order.[15]  Unfortunately for Defendant, that legal argument, which fills only two full pages of Defendant's memorandum of law, is not supported by even facial merit.  The Court reaches this conclusion for each of the following two independent reasons.

First, Defendant's advice-of-counsel argument appears immaterial to that portion of Plaintiff's claim premised on Defendant's actions occurring between October 5, 2007, and

---

[15]    The Court notes also that, by the time Plaintiff's response to Defendant's motion was due (i.e., between December 9, 2011, and January 9, 2012), he had received adequate notice of this rule. More specifically, the Court finds that Plaintiff received this notice through (1) the courtesy copy of the District's Local Rules of Practice and Pro Se Handbook on file at his institution, (2) the notice provided to him by Defendant with his motion, and (3) the six decisions and orders of dismissal issued in Plaintiff's six previous prisoner civil rights actions in this District.

October 10, 2007.  Defendant argues that, in deciding to continue to involuntarily commit Plaintiff, Defendant relied on the advice of counsel, which came by way of a letter dated October 10, 2007.  The problem is that the alleged due process violation at issue–i.e., involuntarily continuing to commit Plaintiff without affording Plaintiff prior notice and a hearing–first occurred *before* the sending of that letter, when the order of commitment expired on October 5, 2007 (or perhaps immediately after it expired).  While Defendant's advice-of-counsel argument could conceivably serve as a ground for dismissing that portion of Plaintiff's claim premised on Defendant's actions occurring between October 10, 2007, and December 4, 2007, as it is currently briefed, it could not reasonably serve as a ground for dismissing that portion of Plaintiff's claim premised on Defendant's actions occurring between October 5, 2007, and October 10, 2007.

Second, as it is currently briefed, Defendant's advice-of-counsel argument could not even serve as a ground for dismissing that portion of Plaintiff's claim premised on Defendant's actions occurring between October 10, 2007, and December 4, 2007.  This is because Defendant's argument is devoid of an adequate explanation of why the claimed right could *reasonably* have been perceived as not having been clearly established during the time in question (thus rendering reasonable the solicitation of, and reliance on, any legal advice).  (*See* Dkt. No. 12, Attach. 10, at 18-20 [attaching pages "16" through "18" of Def.'s Memo. of Law].)

As the Court construes it, the claimed right in this case is the Fourteenth Amendment procedural due process right of a convicted sex offender to notice and an opportunity to be heard *before* (or perhaps *immediately* after) he continues to be involuntarily committed to a psychiatric center as part of a civil commitment (here, pursuant to Article 10 of the N.Y. Mental Hygiene Law) for a period of time beyond the expiration of an order of commitment of a mentally ill inmate (here, issued pursuant to N.Y. Correction Law § 402).

14

This right appears to have been clearly established long before the time in question, i.e., on October 5, 2007. *See, e.g., Specht v. Patterson*, 386 U.S. 605, 607-609 (1967) (holding that convicted sex offender had a due process right not to be sentenced to a state mental hospital for a period beyond the expiration of his maximum criminal sentence, without a full judicial hearing "before the magnified sentence [is] imposed"); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 247-52 (1972) (holding that a convicted assailant had a due process right not to be involuntarily committed to a state mental institution past the expiration of his prison sentence, without the conducting of a "defective delinquent proceeding" prior to the continued commitment).[16]

Defendant has articulated no *objective reason* to believe that the New York State Legislature's enactment of Article 10 of the New York Mental Hygiene Law on April 13, 2007, somehow abrogated or qualified that constitutional right–assuming such an abrogation or qualification by a state statute were possible. Similarly, Defendant has articulated no objective reason to believe that the New York State Court of Appeals issuance of its decision in *Harkavy II* on June 5, 2007, somehow abrogated or qualified that constitutional right, or even undermined the procedural protections afforded by Article 10.

For example, absent from Defendant's motion papers are (1) any identification of the specific legal issue that prompted Defendant to seek the advice of counsel on October 10, 2007,

---

[16] *Cf. Foucha v. Louisiana,* 504 U.S. 71, 78 (1992) ("[K]eeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness and dangerousness."); *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980) ("We have recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty . . . and in consequence "requires due process protection.") (internal quotation marks and citations omitted); *Addington v. Texas*, 441 U.S. 418, 425-33 (1979) (holding that arrestee had a due process right not to be involuntarily committed to a state mental hospital for an indefinite period absent a civil commitment proceeding employing the "clear and convincing evidence" standard, not simply a "preponderance of the evidence" standard); *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975) ("[E]ven if ... involuntary confinement [is] initially permissible [and founded upon a constitutionally adequate basis], it [can] not constitutionally continue after that basis no longer exist[s].").

15

and (2) testimony by Defendant that such an issue was the reason he was seeking such advice. (*Cf.* Dkt. No. 12, Attach. 2, at ¶ 10 [Def. Decl., stating only, in pertinent part, that, "[a]fer receiving [the letter and Voluntary Request for Hospitalization from Plaintiff's counsel], I consulted with OMH counsel about this matter and I was informed that plaintiff was in lawful custody of OMH pursuant to the provisions of MHL Article 10 and the Court of Appeals' decision in *Harkavy II*. Thus, it was not necessary that plaintiff's status be converted to a voluntary status."].)

These omissions by Defendant are glaring, given that, at least in the Court's view, Article 10 clearly (1) imposed on Defendant a duty to give an individual notice of referral to a case management team before continuing to involuntarily commit that individual past the expiration of an order of commitment issued pursuant to N.Y. Correction Law § 402, (2) created a procedure pursuant to which the Attorney General could file a securing petition if it appeared that the individual was entitled to release before a case review team made its determination, and (3) required a hearing to occur either before the individual's anticipated release date or within 72 hours from that date. *See* N.Y. Mental Hyg. Law §§ 10.05(b), 10.05(e), 10.06(f), 10.6(h). Indeed, the Court notes that, on June 27, 2007, Article 10 appears to have been clear enough to the staff at St. Lawrence Psychiatric Center (of which Defendant was the Director at that time)[17] for them to have caused another convicted sex offender who was admitted there to be properly served with a notice of referral to a case review team pursuant to Article 10 (for an evaluation of whether he required civil management)–more than three months before the expiration of his prison sentence, which was also on October 5, 2007. *New York v. Swartz*, 852 N.Y.S.2d 689,

---

[17]   (Dkt. No. 12, Attach. 2, at ¶ 2 [Def. Decl.].)

16

690 (N.Y. Sup. Ct., Chenango Cnty. 2007).[18]

Furthermore, the Court can find nothing in *Harkavy II* undermining Article 10. *See Harkavy v. Consilvio*, 8 N.Y.3d 645, 653 (N.Y. 2007). Indeed, on the first page of its analysis in *Harvkay II*, the New York State Court of Appeals rather expressly explained, "petitioners are entitled to the procedural protections set forth in Mental Hygiene Law article 10 . . . ." *Harkavy v. Consilvio*, 8 N.Y.3d at 648. Later in the decision, the Court of Appeals expressly summarizes those procedural protections. *Id*. at 651.

Simply stated, based on the current record, there appears to be a genuine dispute of material fact as to whether psychiatric center directors of reasonable competence could have disagreed as to whether involuntarily confining Plaintiff after October 5, 2007, without notice and a prior (or immediately subsequent) opportunity to be heard, violated his rights under the Due Process Clause of the Fourteenth Amendment.

Having said all of that, the Court cannot help note that a real possibility appears to exist that Defendant's inability to persuade the Court regarding his advice-of-counsel argument is due to correctable omissions in his legal arguments and affidavit testimony.[19] Ordinarily, the Court

---

[18]     Inexplicably, this notice was not provided to Plaintiff in this action.

[19]     For example, while this fact is currently unclear, it is conceivable to the Court that Defendant sought, and relied on, the advice of counsel, because of a combination of, *inter alia*, the following four circumstances: (1) the fact that the New York State Legislature's first attempt to deviate from the procedure set forth in N.Y. Correction Law § 402 for individuals such as Plaintiff (i.e., through reliance on Article 9) met with disapproval in *Harkavy I*, giving Defendant reason to believe that the legislature's second attempt to so deviate (i.e., through enactment of Article 10) might have met with at least some disapproval in the four-month-old case of in *Harkavy II*; (2) confusion about whether Article 10 required only an "expeditious[]" review of Plaintiff's status, based on the Court of Appeals' statement in *Harkavy II* that "we trust that the parties will conduct the required proceedings expeditiously, as article 10 directs"; (3) confusion about whether the deadlines established by Article 10 were only optional, based on Article 10's provision that "failure to give notice within [the required] time period shall not affect the validity of such notice or any subsequent action, including the filing of a sex offender civil management petition"; and (4) confusion about whether Article 10 applied at all in the presumably unusual circumstance of an individual, such as Plaintiff, wanting not to be released but simply to have to

would decline to give a summary judgment movant a second bite at the apple.  However, here, the Court is reluctant to conduct a time-consuming and expensive trial on a claim that could, very possibly, be disposed by pre-trial motion.[20]  <u>As a result, in this particular circumstance, the Court will deny Defendant's motion only without prejudice to renewal within thirty (30) days of the date of this Decision and Order.  Defendant's renewed motion for summary judgment must be limited, however, to his qualified immunity argument</u>.

    **ACCORDINGLY**, it is

    **ORDERED** that Magistrate Judge Peebles' Report-Recommendation (Dkt. No. 14) is **<u>ACCEPTED</u>** and **<u>ADOPTED</u>** in its entirety; and it is further

    **ORDERED** that Defendant's motion for summary judgment (Dkt. No.12) is **DENIED without prejudice**; and it is further

    **ORDERED** Defendant's renewed motion for summary judgment, which must be limited to his qualified immunity argument, is due **THIRTY (30) DAYS** from the date of this Decision and Order.

Dated: September 20, 2012
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

status changed to one of voluntary commitment.  The Court expresses no opinion at this time as to whether such circumstances would render Defendant's request for, and reliance on, such advice reasonable.

    [20]    The Court's reluctance is magnified by its consideration of the amount of actual damages that Plaintiff could realistically obtain at trial.  The Court notes that (1) between October 5, 2007, and November 30, 2007, Plaintiff did not seek release but only voluntary commitment due to his need for further treatment, (2) Defendant appears to have effected Plaintiff's release promptly after receiving notice of a judge's order to do so, on December 3, 2007, and (3) Defendant obtained the involuntary commitment of Plaintiff after seeking to do so on December 5, 2007.