IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DAVID McCHESNEY,

                              Plaintiff,

                                          Civil Action No.
            v.                            9:10-CV-1409 (GTS/DEP)

SAMUEL BASTEIN, IV,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

DAVID McCHESNEY, *Pro Se*
#25527
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403-0300

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN         MICHAEL McCARTIN, ESQ.
Attorney General of               Assistant Attorney General
the State of New York
The Capital
Albany, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff David McChesney, a convicted sex offender who is currently civilly committed to the Central New York Psychiatric Center ("CNYPC") for participation in sex offender treatment, has commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint asserts a procedural due process violation against defendant Samuel Bastien based upon McChesney's alleged involuntary detention at another psychiatric facility operated by the New York State Office of Mental Health ("OMH") for a period of sixty days, from October 5, 2007 until December 4, 2007.

Currently before the court is a second motion for summary judgment, filed by the defendant with permission from the court, seeking dismissal of plaintiff's complaint on the basis of qualified immunity. For the reasons set forth below, I recommend that defendant's motion be granted.

I.  BACKGROUND

Plaintiff is a three-time convicted sex offender. Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 1.[1] On April 5, 2007, following the completion of a prison sentence, plaintiff consented to the issuance of an order by a New York supreme court justice, pursuant to New York Correction Law § 402 ("section 402"),[2] authorizing his transfer out of the New York State prison in which he had been confined and into the Saint Lawrence Psychiatric Facility ("SLPC"), a facility operated by the OMH. *Id.* at ¶ 3. Under its terms, that commitment order was scheduled to expire on October 5, 2007. *Id.* at ¶ 23.

---

[1]     Because plaintiff has not opposed defendant's motion for summary judgment, the facts set forth in defendant's statement of material facts, submitted pursuant to rule 7.1(a)(3) of the local rules of practice for this court, are deemed admitted by plaintiff for purposes of the pending motion. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."); *see also Ketchuck v. Boyer*, No. 10-CV-0870, 2011 WL 508040, at *2 (N.D.N.Y. Oct. 25, 2011) (McAvoy, J.) ("The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly." (listing cases)).

[2]     Section 402 outlines the procedures to be followed for the commitment of a mentally ill prison inmate. *See generally* N.Y. Corr. Law § 402. That provision requires that a prison superintendent first apply to the court for appointment of two examining physicians, and then petition the court again for a commitment order, providing a copy of the petition to the inmate, the inmate's friend or relative, and the Mental Hygiene Legal Service. N.Y. Corr. Law § 402; *see also Harkavy v. Consilvio* ("*Harkavy I*"), 7 N.Y.3d 607, 612 (2006). Section 402 also provides the inmate with an opportunity to request a hearing before a judge after receiving a copy of the petition but before being committed to a psychiatric hospital. N.Y. Corr. Law § 402(3).

Although plaintiff was originally transferred into the SLPC as an "inmate in need of care and treatment" pursuant to the section 402 commitment order, his status was effectively converted to that of a "detained sex offender" under article 10 of the Mental Hygiene Law ("article 10") on April 13, 2007, the date upon which that provision became effective. Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 5. As Executive Director of the SLPC, defendant was counseled by the OMH Counsel's Office and OMH Division of Forensic Services regarding this transition. *Id.*

"Article 10 establishes a multi-step process that may lead to the civil commitment of some [sex] offenders and the outpatient supervision and treatment of others." *State of N.Y. ex rel Harkavy v. Consilvio* ("*Harkavy II*"), 8 N.Y.3d 645, 651 (2007). Generally, under article 10, a person nearing the end of his prison sentence, and identified by the OMH Commissioner as someone who is potentially subject to further confinement as a sex offender, is referred to a multidisciplinary team. N.Y. MHL Art. 10.05. That multidisciplinary team undertakes a review of the person's case file in order to determine whether he should be referred to the New York State Attorney General, who then may file a "sex offender civil management petition" in a New York supreme or county court. N.Y.

MHL Art. 10.06; *Harkavy II*, 8 N.Y.3d at 651. Upon the filing of such a petition, the person then must be afforded a probable cause hearing "and, ultimately, a jury trial to determine whether the offender suffers from a 'mental abnormality' within the meaning of [article 10]." *Harkavy II*, 8 N.Y.3d at 651.

In this case, on June 27, 2007, plaintiff received notice of his entitlement to a hearing, and that his case file would be reviewed in accordance with article 10 and *Harkavy II*. Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶¶ 19-20; Bastien Decl. Exh. C (Dkt. No. 18-6). Although plaintiff's case review began before the expiration of the original section 402 commitment order on October 5, 2007, it had not yet been completed by that date.[3] *Id.* at ¶ 19. It should be noted that article 10 confers no authority upon defendant in his position as Executive Director of the facility in which plaintiff was confined at the time; only the New York State Attorney General is authorized to file a petition under that provision. *See generally* N.Y. MHL Art. 10. In addition, defendant was not a part of the

---

[3] When *Harkavy II* was decided, there were 125 offenders, in addition to plaintiff, detained under article 10, and another 733 new referrals from various agencies, whose cases needed review by a multidisciplinary OMH staff. Bastien Decl. (Dkt. No. 18-4) at ¶ 11.

multidisciplinary team reviewing plaintiff's case pursuant to article 10. Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 21.

On October 10, 2007, five days after the expiration of the section 402 commitment order, an attorney with Mental Hygiene Legal Services representing the plaintiff sent defendant a letter advising that McChesney was aware that the commitment order had expired, but he nevertheless desired to remain at the SLPC as a voluntary patient, "consistent with his original decision to consent to the 402 retention order." Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 23; Bastien Decl. Exh. B. (Dkt. No. 18-6). The letter further stated, "Please note that Mr. McChesney is making this request for voluntary admission . . . based on his realization that he is in need of further treatment for his maladaptive behaviors, and his desire to avoid litigation concerning his legal status while being held at SLPC." Bastien Decl. Exh. B (Dkt. No. 18-6). Attached to the letter was a "voluntary request for hospitalization" signed by the plaintiff on October 10, 2007. Bastien Decl. Exh. D (Dkt. No. 18-11).

Upon receipt of that correspondence, defendant sought advice from the OMH Counsel's Office, the New York State Attorney General, and the Division of Forensic Services Bureau of Sex Offender Treatment as to

whether plaintiff's status could be converted to voluntary. Bastien Decl. (Dkt. No. 18-4) at ¶ 13. Defendant was advised that, because plaintiff was committed at the SLPC under article 10 at the time, rather than under section 402, pursuant to the Court of Appeals' decision in *Harkavy II*, plaintiff's status could not be converted to voluntary. Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 25.

On November 20, 2007, plaintiff filed a petition in New York Supreme Court, St. Lawrence County, pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking an order mandating that defendant release him from involuntary confinement, and allow him to apply for voluntary admission to the SLPC. Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 28; Compl. Exh. C (Dkt. No. 1) at 9-13; Bastien Decl. Exh. E (Dkt. No. 18-9). Supreme Court Justice David Demarest granted plaintiff's petition on Friday, November 30, 2007, and ordered the OMH to either immediately release plaintiff from the SLPC to the New York State Division of Parole or permit him to apply for voluntary commitment to the SLPC, at his option.[4] Def.'s L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 29;

---

[4] The circumstances surrounding plaintiff's article 78 petition, including the grounds upon which New York Supreme Court Justice Demarest relied in ordering plaintiff's release, are unknown to the court due to the fact that the case is sealed.

Compl. Exh. C (Dkt. No. 1) at 9-13; Bastien Decl. Exh. E (Dkt. No. 18-9). In light of plaintiff's consent to admission to the SLPC in April 2007, and plaintiff's intention, at least as of October 10, 2007, to remain at the SLPC voluntarily, defendant did not take steps to release plaintiff on November 30, 2007, believing that McChesney intended to stay at the SLPC on a voluntary basis. Defendant's L.R. 7.1(a)(3) St. (Dkt. No. 18-11) at ¶ 31-33. On December 3, 2007, however, defendant learned of plaintiff's desire to be released, and accordingly took immediate steps to release him in accordance with the state court order.[5] *Id.* at ¶ 35. Due to the need to prepare a suitable release plan, to include arrangements for a residence, appropriate out-patient treatment, and transportation, as well as the need to obtain Division of Parole approval, plaintiff was not released to parole supervision until December 4, 2007. *Id.* at ¶¶ 36-39.

On December 5, 2007, New York Supreme Court Justice Robert Mulvey conducted a probable cause hearing in accordance with the New York State Attorney General's article 10 petition, and found probable

_____

[5]     Defendant became aware that plaintiff sought release on Monday, December 3, 2007, through an e-mail sent by plaintiff's counsel on Friday, November 30, 2007, at 5:50 pm. Because he left his office before 5:15 pm on November 30, 2007, defendant did not review that e-mail until the following Monday. Bastien Decl. (Dkt. No. 12-2) ¶ 12.

cause to detain plaintiff in OMH custody pending trial. Def.'s L.R. 7.1(a)(3)
St. (Dkt. No. 18-11) at ¶ 40; *see also People ex rel. David NN. v. Hogan*,
53 A.D.3d 841, 842 (3d Dep't 2008).

II.     PROCEDURAL HISTORY

On November 22, 2010, plaintiff commenced this action asserting a
due process claim in connection with his detention at the SLPC from
October 5, 2007 to December 4, 2007. Dkt. No. 1. Issue was joined by
defendant's service of an answer on May 16, 2011. Dkt. No. 9.

Following the completion of pretrial discovery, defendant moved for
summary judgment on December 9, 2011, arguing, *inter alia*, that he is
entitled qualified immunity. Dkt. No. 12. Plaintiff failed to respond to that
motion. *See generally* Docket Sheet.

Upon referral of that motion for summary judgment, I issued a report
to District Judge Glenn T. Suddaby, recommending that it be denied.
Report and Recommendation (Dkt. No. 14) at 3. Although Judge Suddaby
adopted that recommendation and denied defendant's motion, he did so
without prejudice to defendant's right to file a second motion for summary
judgment, more fully elaborating upon his claim of entitlement to qualified
immunity. Memorandum-Decision and Order (Dkt. No. 17) at 8. Judge

Suddaby indicated that the purpose of permitting a renewed motion was to avoid a "time-consuming and expensive trial on a claim that could, very possibly, be disposed by pre-trial motion." *Id.* at 18.

On October 18, 2012, defendant filed a second motion for summary judgment. Dkt. No. 18. In his motion, and in accordance with Judge Suddaby's decision and order, defendant argues only that he is entitled to qualified immunity, submitting that it was objectively reasonable for him to rely in good faith upon the legal advice of counsel in determining that plaintiff was lawfully detained at the SLPC at all relevant times pursuant to article 10 and *Harkavy II. See generally* Def.'s Memo. of Law (Dkt. No. 18-12).

Defendant's second motion for summary judgment, to which plaintiff again has failed to respond, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*,

477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there exists a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B.  Qualified Immunity

#### 1.  Legal Standard

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*,

555 U.S. 223, 231 (2009); *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at

issue violated a constitutional right, and if so, "whether that right was 'clearly established' at the time of the events at issue." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (citing *Saucier*, 533 U.S. at 194, 201, 202); *accord*, *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks and alterations omitted). However, "[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" element of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

2.    Analysis

In his decision denying defendant's earlier motion for summary

judgment, Judge Suddaby construed plaintiff's complaint to assert "a

Fourteenth Amendment procedural due process right . . . to notice and an

opportunity to be heard before (or perhaps immediately after) he

continued to be involuntarily committed to [the SLPC] as part of a civil

commitment . . . for a period of time beyond the expiration of [the

voluntary section 402 commitment order]," and concluded that it alleged a

violation of a constitutional right that was clearly established at the time of

defendant's conduct. Memorandum-Decision and Order (Dkt. No. 17) at

14.

To frame the issue and give needed context to the second,

reasonableness prong of the qualified immunity analysis, like Judge

Suddaby, I construe the relevant inquiry to focus upon the procedural due

process requirements associated with plaintiff's continued confinement

after October 5, 2007. Plaintiff consented to his detention at the SLPC up

until that date, whether conceptually that confinement is regarded as

having been authorized under section 402 or instead pursuant to article 10

based upon the Court of Appeals' decision in *Harkavy II*.[6]

Having carefully considered the chronology of relevant events and defendant's declaration, I recommend a finding that it was objectively reasonable for defendant to believe that his conduct throughout plaintiff's stay at the SLPC did not violate plaintiff's Fourteenth Amendment rights, and that defendant is therefore is entitled to qualified immunity. *See McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 277 (2d Cir. 1999) ("[T]he whole point of the qualified immunity defense is to allow a defendant to be dismissed out of the case even if a right was actually violated (*i.e.*, where it can be shown that . . . if the right was clearly established, it was objectively reasonable for the defendant to believe he or she was not violating it.")). "Ordinarily, determining whether official conduct was objectively reasonable requires examination of the information possessed by the officials at that time (without consideration of subjective intent)." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d Cir. 2003); *accord*, *Amore v. Novarro*, 624 F.3d 522, 530-31

---

[6] As is the case under section 402, there does not appear to be any constraint against a person subject to article 10 consenting to forego the procedural requirements of that provision and agreeing to involuntary commitment as a sex offender in need of treatment.

(2d Cir. 2010). "[T]he objective legal reasonableness of an official's actions must be viewed in light of the action's relationship to the clearly established law at the time, and not to some more general standards of reasonable and appropriate governmental conduct." *Walentas v. Lipper*, 862 F.2d 414, 423 (2d Cir. 1988). "[A]n officer is . . . subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" *Amore*, 624 F.3d at 531 (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001)).

In support of his claim of entitlement to qualified immunity, defendant relies on the fact that he sought and acted in reliance upon advice of counsel. As a threshold matter, this argument requires the court to address whether the Second Circuit has definitively held that a defendant may not rely on the advice of counsel to support a qualified immunity defense.[7]

---

[7] Because defendant does not argue that reliance on the advice of counsel constitutes "extraordinary circumstances" under the Supreme Court's case in *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982), I have chosen not to address that possibility. In addition, I decline to do so in recognition of (1) the fact that the Second Circuit has yet to use the exception in that context, *see Taravella v. Town of Wolctt*, 599 F.3d 129, 135 n.3 (2d Cir. 2010) (declining to "decide whether reliance on legal advice constitutes an 'extraordinary circumstances' sufficient by itself to give rise to qualified immunity"); *Croslan v. Hous. Auth. for City of Britain*, 974 F. Supp. 161, 166 (D. Conn. 1997) (recognizing that the Second Circuit has not addressed whether "reliance on legal advice may constitute 'extraordinary circumstances' entitling an official to

In *County of Erie*, the Second Circuit observed that "reliance upon the advice of counsel . . . cannot be used to support the defense of qualified immunity." *Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). Although, when considered in isolation, this statement appears to foreclose defendant's argument in this case, in my view this holding merely precludes a defendant from relying on the advice of counsel to support an argument that he did not know the right allegedly violated by his conduct was clearly established at the relevant time. I have arrived at this conclusion for four reasons.

First, the Second Circuit's statement in *County of Erie* is the second part of a compound sentence that reads, in its entirety, "This is an objective, not a subjective, test, and reliance upon advice of counsel therefore cannot be used to support the defense of qualified immunity." *Cnty. of Erie*, 546 F.3d at 229. The first part of this sentence, in turn, refers to the sentence directly preceding it, which reads, "The question of

_____

qualified immunity"); and (2) the courts that have analyzed the exception recognize that its application is rare, *see*, *e.g.*, *York v. Purkey*, 14 F. App'x 628, 633 (6th Cir. 2001) ("The 'extraordinary circumstances' exception applies only rarely."); *V-1 Oil Co. v. State of Wyo., Dep't of Env't Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990) ("As its name suggests, the 'extraordinary circumstances' exception to the rule that a qualified immunity defense fails where the defendant violated a clearly established right applies only 'rarely.'").

whether a right is 'clearly established' is determined by reference to the case law extant at the time of the violation." *Id.* Therefore, the operative sentence (beginning, "[t]his is an objective . . .,"), including its second-half, refers directly to the second inquiry of the qualified immunity analysis – whether the constitutional right allegedly violated was clearly established at the time of the defendant's conduct.

Second, *County of Erie* addressed a point of confusion in the Second Circuit case law related to a waiver of an attorney-client privilege. The case only coincidentally involved qualified immunity, and, to the extent that the case did address qualified immunity, the defendants in that case argued only that "their actions were lawful [and] that any rights violated were not clearly established." *Cnty. of Erie*, 546 F.3d at 229. Said differently, unlike the defendant in the case before the court, the defendants in *County of Erie* did not argue they were entitled to qualified immunity because their conduct was objectively reasonable. *Id.* Accordingly, the Second Circuit could not have been referring to whether it was objectively reasonable for the defendants to believe that their conduct did not violate the plaintiff's rights when it held that defendants could not rely on advice of counsel.

Third, in light of the eight other circuits[8] that have found that a defendant may rely on the advice of counsel in support of his qualified immunity defense, had the Second Circuit intended to hold, as a general principle, reliance on an attorney's advice cannot support a qualified immunity defense, one would anticipate that such a holding would be accompanied by a more robust analysis rejecting the reasoning of those courts.

Fourth, and finally, two years after *County of Erie*, the Second Circuit explicitly neglected to answer the question of whether "reliance on the advice of counsel constitutes an 'extraordinary circumstance' sufficient by itself to give rise to qualified immunity." *Taravella v. Town of Wolcott*, 599 F.3d 129, 135 n.3 (2d Cir. 2010). This express acknowledgment of the possibility that reliance on advice of counsel might support a qualified immunity defense leads me to conclude that *County of Erie* did not foreclose the question altogether.

_____

[8] *See Cox v. Hainey*, 391 F.3d 25, 34-35 (1st Cir. 2004); *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1019 (9th Cir. 2003); *York v. Purkey*, 14 F. App'x 628, 633 (6th Cir. 2001); *Paff v. Kaltenbach*, 204 F.3d 425, 441 (3d Cir. 2000); *Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998); *Buonocore v. Harris*, 134 F.3d 245, 253 (4th Cir. 1998); *V-1 Oil Co. v. State of Wyo., Dep't of Env'tl Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990); *Watertown Equip. Co. v. Norwest Bank Watertown, N.A.*, 830 F.2d 1487, 1495 (8th Cir. 1987).

For all of these reasons, I have considered defendant's arguments related to his reliance on the advice of counsel in determining whether it was objectively reasonable for him to believe his conduct did not violate plaintiff's Fourteenth Amendment rights. *But see Holmes v. Town of East Lyme*, 866 F. Supp. 2d 108, 128 (D. Conn. 2012) (relying on *County of Erie*, and finding that the defendants may not rely on the advice of counsel to support their qualified immunity defense). Having done so, I find that it was objectively reasonable for defendant to believe that his retention of plaintiff at the SLPC from April 5, 2007, through December 4, 2007, did not violate any of McChesney's rights. To be sure, the legal impact of the implementation of article 10 and its effect upon those sex offenders who, like plaintiff, were originally confined under section 402, was anything but clear at the time article 10 became effective. As was previously discussed, while *Harkavay II* instructed the OMH to conduct article 10 proceedings for those previously confined under section 402 "expeditiously," it did not provide meaningful guidance concerning that command.[9]

---

[9]      The New York State Court of Appeals neglected to define "expeditiously." *Harkavy II*, 8 N.Y.3d at 653. In light of the large number of cases requiring review under article 10 at its inception, as discussed above, I find no evidence in the record tending to show defendant or OMH did not expeditiously undertake review of plaintiff's case.

Defendant was informed by counsel that, upon the effective date of article 10, April 13, 2007, plaintiff was confined under its provisions, and that confinement did not depend upon the section 402 commitment order. Bastien Decl. (Dkt. No. 18-4). He was also advised by counsel that plaintiff remained in lawful custody of the OMH even after October 5, 2007, pursuant to article 10 and *Harkavy II*. *Id.*

*Harkavay II* presented complicated legal questions at the time giving rise to the events in this case, including whether it was lawful to continue detention of prison inmates previously admitted to an OMH facility (like plaintiff) while their cases were reviewed under article 10. In light of those questions, officials in defendant's position could reasonably disagree over whether plaintiff should have been held beyond the October 5, 2007 expiration of the commitment order while his article 10 case review proceeded, and whether *Harkavy II* implicitly determined that plaintiff's continued detention at the SLPC was lawful pending the article 10 case review. Given these uncertainties, defendant reasonably relied on the advice of counsel indicating that plaintiff's continued retention was lawful between October 5, 2007, and November 30, 2007.

The analysis shifts slightly, however, when considering whether it

was reasonable for defendant to believe that plaintiff's retention at the SLPC was lawful from November 30, 2007, until December 4, 2007. On November 30, 2007, Justice Demarest ordered that plaintiff either be released or permitted to apply for voluntary status at the SLPC. Although the record is silent as to when defendant became aware of the issuance of this order, even assuming that he learned of it on November 30, 2007, it was reasonable for a person in defendant's position to believe that his conduct on that date (retaining plaintiff at the SLPC) was lawful. Indeed, in support of his motion, defendant Bastien has submitted a declaration averring that, between October 5, 2007, and November 30, 2007, he believed plaintiff wished to remain at the SLPC on a voluntary basis. Bastien Decl. (Dkt. No. 18-4) at ¶ 16. Because voluntary commitment was one of the options presented in Justice Demarest's order, it was reasonable for defendant to believe that continued retention of plaintiff at the SLPC on November 30, 2007 was lawful. It was only upon receipt of an e-mail from plaintiff's attorney on December 3, 2007, that defendant was alerted to plaintiff's desire for release. Upon learning of plaintiff's choice, defendant promptly made arrangements for his release, which was effectuated on the following day.

23

Moreover, even setting aside his reliance upon the advice of counsel, I conclude that it was reasonable for defendant to believe that he was not violating plaintiff's rights by holding plaintiff at the SLPC through December 4, 2007. This is so because (1) Bastien knew that plaintiff had consented to be transferred into the SLPC in April 2007; (2) there is no record evidence showing that plaintiff desired to be released on October 5, 2007 (or that defendant had reason to know of any such desire); (3) defendant knew that article 10 became effective April 13, 2007, and the New York State Court of Appeals held that sex offenders, like plaintiff, who were civilly committed to the SLPC pursuant to section 402 were entitled to the procedures set forth in article 10; (4) defendant was aware that plaintiff's case was being reviewed under article 10 pursuant to *Harkavy II*; (5) as of October 10, 2007, plaintiff sought voluntary admission to the SLPC; (6) on November 30, 2007, when Justice Demarest issued his order that defendant either release plaintiff or permit him to seek voluntary confinement, plaintiff had not yet learned of plaintiff's desire to be released; and (7) upon being apprised of plaintiff's wish to be released, defendant immediately set in motion the steps necessary to effectuate his release. The combination of all of these facts leads me to find that it was

objectively reasonable for defendant to believe that his conduct in holding plaintiff at the SLPC pending a case review pursuant to article 10, or until learning that plaintiff sought release, was lawful, and that a reasonable official in his position would not have known that his conduct violated plaintiff's constitutional rights. *See Taravella*, 599 F.3d at 135 (finding that, where an employment contract was "ambiguous as a matter of law" as it relates to a termination provision, the defendant acted reasonably in firing the plaintiff without a pretermination hearing); *cf. Blumenthal*, 346 F.3d at 102 (finding the defendant entitled to qualified immunity relying primarily on the fact that "the challenged conduct involved enforcement of a presumptively valid statute").

IV.    SUMMARY AND RECOMMENDATION

Defendant seeks dismissal of plaintiff's complaint based on an argument that he is entitled to qualified immunity under the circumstances of this case. Plaintiff has failed to oppose that motion. Even assuming that one of plaintiff's clearly established constitutional rights was violated by defendant in this case, in light of the complicated legal questions presented by a newly effective New York State law and the New York State Court of Appeals' interpretation of that law, I find that it was

objectively reasonable for defendant to believe that his conduct did not violate plaintiff's rights. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for summary judgment, Dkt. No. 18, based on a qualified immunity defense, be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby further

ORDERED that the clerk of the court serve a copy of this report and recommendation on the parties in accordance with this court's local rules.

Dated:     June 28, 2013
           Syracuse, New York

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge